UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN MICHAEL GANCEDO,

        Petitioner,

v.                                   Case No. 5:17-cv-83-OC-34PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner John Gancedo, an inmate of the Florida penal system, initiated this action on February 23, 2016,[1] by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Gancedo challenges a 2015 state court (Citrus County, Florida) judgment of conviction for manufacturing methamphetamine and possession of listed chemicals. Gancedo raises one ground for relief. See Petition at 6-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response to Petition (Response; Doc. 12) with exhibits (Resp. Ex.). On August 28, 2017, Gancedo filed a brief in reply. See Reply to State's Response (Reply; Doc. 14.). Gancedo also filed a motion for summary judgment (Motion; Doc. 19) on June 19, 2019. This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On September 6, 2013, the State of Florida (State) charged Gancedo by way of Information with manufacturing methamphetamine (count one), possession of paraphernalia (count two), and possession of listed chemicals (count three). Resp. Ex. A at 1-2. On September 25, 2013, Gancedo entered a no contest plea to all three counts. Id. at 9. On the same day, the circuit court sentenced Gancedo to time served as to count two and imposed a sixty-month term of drug offender probation as to counts one and three. Id. 9, 11-17. Gancedo did not appeal.

On April 15, 2014, the Florida Department of Corrections (DOC) sent a notification to the circuit court regarding a technical violation of probation from a positive urinalysis test. Id. at 18. The circuit court took no further action on the violation. Id. On July 1, 2014, the DOC issued an affidavit of violation of probation, alleging Gancedo tested positive for methamphetamine. Id. at 19-20. On August 12, 2014, Gancedo admitted violating his probation. Id. at 24. That same day, the circuit court revoked Gancedo's probation and imposed a term of incarceration of seven years in prison, suspended upon successful completion of twenty-four months of community control and drug offender probation. Id. at 24-40. Gancedo did not appeal.

On October 27, 2014, Gancedo violated his community control by failing to remain confined to his approved residence. Id. at 41-44. On January 16, 2015, the circuit court dismissed the violation of probation charge. Id. at 45. The DOC again notified the circuit court of a technical violation of Gancedo's drug offender probation on June 8, 2015, when the DOC alleged Gancedo tested positive for benzodiazepines and methamphetamine.

Id. 46. The circuit court determined no further action was required and ordered supervision be continued. Id.

On July 2, 2015, the DOC issued another affidavit of violation of probation, alleging Gancedo failed to participate in a specialized drug court treatment program and failed to remain confined to his approved residence. Id. at 47-56. The DOC later issued an amended affidavit adding an additional allegation that Gancedo failed to notify his probation officer that he changed addresses. Id. at 57-58. On October 9, 2015, Gancedo admitted violating his probation. Id. at 59. On the same day, the circuit revoked his community control and probation and sentenced Gancedo to a term of incarceration of seven years in prison as to counts one and three, with each count running concurrently. Id. at 59-72. Gancedo did not appeal.

On April 13, 2016, Gancedo filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. B at 44-58. In the Rule 3.850 Motion, Gancedo raised the following four claims of ineffective assistance: (1) advising him to enter an open plea of guilty to his violation of probation charges; (2) failing to investigate witnesses; (3) failing to advise him of how he violated his probation; and (4) failing to file a direct appeal. Id. The circuit court denied the Rule 3.850 Motion. Id. at 3-7. On December 13, 2016, Florida's Fifth District Court of Appeal (Fifth DCA) per curiam affirmed the circuit court's denial of the Rule 3.850 Motion without issuing a written opinion. Resp. Ex. C at 32. Gancedo moved for rehearing, id. at 33-34, which the Fifth DCA denied on December 21, 2016. Id. at 36. The Fifth DCA issued its Mandate on January 30, 2017. Id. at 37. Gancedo petitioned the Florida Supreme Court to review the

Fifth DCA's decision, id. at 38, but the Florida Supreme Court dismissed the petition for lack of jurisdiction. Id. at 39.

On January 27, 2017, Gancedo filed a motion entitled stay of execution, in which he argued his plea was illegal because the court costs, fees, and fines the circuit court ordered him to pay violated the United States Constitution. Resp. Ex. A at 73-75. The circuit court construed this motion as a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) and struck the motion. Id. at 76-77. On February 27, 2017, Gancedo filed a motion to reduce his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). Id. at 78-82. On March 7, 2017, the circuit court dismissed the motion as untimely. Id. at 83-84.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

<u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Gancedo's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does

> provide a relevant rationale. It should then presume that the
> unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by

showing that the higher state court's adjudication most likely relied on different grounds

than the lower state court's reasoned decision, such as persuasive alternative grounds

that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at

1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation

of the claim unless the state court's decision (1) "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States;" or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited

scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of
> state courts' erroneous legal conclusions. As explained by the
> Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct.
> 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two
> distinct clauses: a "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause allows for relief
> only "if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the
> state court decides a case differently than [the Supreme]
> Court has on a set of materially indistinguishable facts." Id. at
> 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable
> application" clause allows for relief only "if the state court
> identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of
> state courts' erroneous factual determinations. Section
> 2254(d)(2) allows federal courts to grant relief only if the state

court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.2d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

### VI. Findings of Fact and Conclusions of Law

In his Petition and Motion, Gancedo argues that his counsel was ineffective for failing to investigate and interview three witnesses: Felicia Witfoth, his girlfriend; Shannon Stevens, a motel manager; and Bruce Deyarmond a drug program director. Petition at 6-11. According to Gancedo, all three witnesses were available to testify and would have

testified that his violations "were not caused by willful conduct." Id. at 6. First, Gancedo contends that Witfoth and Steven would have been able to testify that he was unable to obtain transportation to his drug treatment class and that Deyarmond would have testified this was the reason he was discharged from the class. Id. at 6-7. Second, he asserts that Witfoth and Stevens would have been able to testify that he was forced to leave his residence at the motel because he could not afford another night, and both would have testified he tried every avenue he could to reach his probation officer. Id. at 7. Gancedo claims he asked his attorney about calling these witnesses prior to entering his open plea, but counsel told him the testimony would not help him and his only option was to enter an open plea and seek mercy from the circuit court based on Gancedo's addiction to drugs. Id. at 7-8. But for counsel's alleged deficiencies, Gancedo claims he would not have entered the open plea and would have proceeded to a revocation hearing. Id. at 9-10.

Respondents contend that this claim is unexhausted. Response at 4-6. While recognizing Gancedo raised this issue in his Rule 3.850 Motion, Respondents maintain Gancedo failed to exhaust this claim because he did not raise the denial of the claim on appeal. Id. According to Respondents, in his appeal of the denial of his Rule 3.850 Motion, Gancedo argued that the circuit court erred by not allowing him to amend his motion and by failing to hold an evidentiary hearing on his claims. Id. Without arguing the denial of the claims themselves was error, Respondents assert that Gancedo failed to invoke a complete round of Florida's appellate procedure. Id. In his Reply, Gancedo avers that he did exhaust this claim because he argued on appeal that an evidentiary hearing was necessary because the record did not conclusively refute his claims, contrary to the circuit court's ruling. Reply at 5-7.

The record reflects that in his appeal Gancedo first argued that the circuit court erred: (1) in addressing the merits of his claim without first giving him leave to amend facial insufficiencies; and (2) by not holding an evidentiary hearing on his claims. Resp. Ex. C at 1-25. As to his second point on appeal, Gancedo argued that the record did not refute his claims, including the one he presents to this Court now; therefore, an evidentiary hearing was needed. Id. at 21-22. In arguing that the record did not refute his claims, Gancedo challenged the circuit court's ruling on the merits, thus requiring the Fifth DCA to determine whether or not the record did refute his claims. Accordingly, the Court finds Gancedo did present the state appellate court with an opportunity to review the merits of this claim, thus exhausting it.

Having determined Gancedo exhausted this claim, the Court now turns to whether or not deference is owed to the state appellate court's adjudication of this claim. As noted above, Gancedo raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. B at 47-48. In denying this claim, the circuit court explained:

> Meanwhile, in Ground 2 of the Defendant's motion, he claims his trial counsel was ineffective for failing to investigate and interview witnesses. The Defendant contends these witnesses would have supported his contentions that he did not willfully violate probation. Again, these allegations are conclusively refuted by the record. Specifically, Ms. Felicia Witforth [sic] was present at [the] time of sentencing and testified on behalf of the Defendant. Ms. Witforth [sic] testified she was arrested at the same time with the Defendant. Meanwhile, the Defendant has failed to demonstrate how Shannon Stevens' knowledge of the Defendant's residence would have assisted in refuting the State's claim. Therefore, Defendant's Ground 2 is without merit.

Id. at 6 (record citations omitted). The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. C at 32, 36.

To the extent that the Fifth DCA decided this claim on the merits,[7] the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gancedo is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground One is meritless. "A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). Indeed, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). Under Florida law, by entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Notably, a defendant "cannot assert that his plea was not knowingly and voluntarily entered where

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

he concedes he was well aware of his counsel's deficiencies prior to entry of his plea." Davis, 938 So. 2d at 557.

At the revocation hearing held on October 9, 2015, the circuit court discussed all three violations the DOC accused Gancedo of committing, and Gancedo admitted to having violated these conditions of his probation, Resp. Ex. B at 32-34, and in making a statement to the circuit court, Gancedo maintained that he took "full responsibility." Id. at 39. By entering this open plea, Gancedo waived any right to have his counsel investigate or put forth a defense. See Smith, 41 So. 3d at 1040. Moreover, Gancedo's sworn representations to the circuit court that he committed the violations and takes full responsibility refute his current claims. Additionally, Gancedo admits in his Petition that he was well aware of his counsel's failure to investigate these witnesses prior to entering his plea; therefore, under Florida law, he cannot assert he did not knowingly and voluntarily enter this open plea. See Davis, 938 So. 2d at 557. Even if counsel presented these witnesses, the Court notes that in Florida there is no per se rule that failure to keep an appointment due to transportation problems is insufficient to demonstrate a willful and substantial violation of a condition of probation. Mier v. State, 58 So. 3d 319, 322 (Fla. 1st DCA 2011). Thus, the circuit court still could have determined this violation was willful even after hearing the testimony of these witnesses. Notably, at the revocation hearing the circuit court discussed how Gancedo directed his landlord to tell the probation officer he had moved. Resp. Ex. C at 32-33. As such, the circuit court was already aware of Stevens' proposed testimony concerning Gancedo's change in address. Based on the above analysis, the Court finds there is no reasonable probability that Gancedo would

have forgone this open plea and proceeded to a revocation hearing. Therefore, Gancedo is not entitled to relief and the claim raised in his Petition and Motion is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Gancedo seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Gancedo "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) and Motion for Summary Judgment (Doc. 19) are **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Gancedo appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** in Chambers, this 10th day of October, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:
John Gancedo #U49399
counsel of record